IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM WRIGHT,

    Petitioner,

v.

WARDEN OF EASTERN CORRECTIONAL
INSTITUTION, and
THE ATTORNEY GENERAL OF
STATE OF MARYLAND,

    Respondents.

Civil Action No.: BAH-23-111

**MEMORANDUM OPINION**

Self-represented Petitioner, William Wright, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he challenges the validity of his convictions and sentence in the Circuit Court for Harford County, Maryland, for home invasion, robbery with a deadly weapon, and first-degree assault. ECF 1. The Petition is fully briefed. ECFs 1, 5, 7. Upon review of the submitted materials, the Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2025); Rules 1(b) and 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For the reasons set forth below, the Petition will be DENIED.

**I.   BACKGROUND**

    **A. Convictions and Sentence**

On October 6, 2015, Wright was indicted on seventeen charges in the Circuit Court for Harford County (the "home invasion case").[1] ECF 5-1, at 8, 39. On May 26, 2016, Wright was arrested in Nevada on a probation violation due to the new charges and extradited to Maryland.

---

[1] The Appellate Court of Maryland briefly described the facts: "On September 10, 2015, [Wright] and a woman entered a residence and robbed the homeowners at gunpoint, stealing cash and jewelry worth over $40,000. [Wright] pointed a gun at a caregiver in the house." ECF 5-1, at 179.

ECF 5-8. On July 12, 2016, public defender Jerri Peyton, entered an appearance on behalf of Wright in his probation violation case and intended to also represent him in the home invasion case, but erroneously entered her appearance under the wrong docket number. *Id.* at 4, 6–7, 13. On September 12, 2016, Wright appeared in court for proceedings in his probation violation case and informed Peyton that his home invasion case was not moving forward and that he had not been served with the indictment. *Id.* at 9. Peyton arranged with the prosecutor to schedule a pretrial conference. *Id.* at 11–12. She also entered an appearance under the correct docket number. *Id.* at 11; ECF 5-1, at 42. On October 17, 2016, a scheduling order was entered that set the trial date for January 19, 2017. *Id.* at 43.

On December 12, 2016, the public defender's office informed the court they had a conflict of interest and outside counsel was assigned to represent Wright. ECF 5-4. New counsel, Tara LeCompte, filed a Motion to Dismiss the indictment arguing that the trial date was scheduled outside of 180 days, in violation of the "*Hicks* Rule." *See* Md. Rule 4-271(a)(1). On January 19, 2017, the day trial was set to begin, over an objection from the defense, the trial court postponed the trial date. ECF 5-5. The trial court advised the parties that Wright's Motion to Dismiss needed to be heard by a judge who was unavailable. *Id.* The trial date was reset to March 15, 2017. *Id.* at 7.

When the trial date arrived, the defense asked for a continuance because Peyton, the main witness whose testimony was needed to adjudicate the Motion to Dismiss, was unavailable. ECF 5-7, at 2. The trial court reset the hearing on Wright's motion for April 10, 2017, and the trial date for June 6, 2017. *Id.* On April 10, 2017, the trial court heard Wright's Motion to Dismiss, including testimony from Peyton and Wright. ECF 5-8. Wright argued that the *Hicks* deadline should be calculated starting on July 12, 2016, because even though Peyton entered the wrong

docket number, his original counsel intended to enter her appearance in his home invasion case. *Id.* at 35. However, the trial court found that the deadline would be calculated from September 12, 2016, when counsel's appearance was officially entered on the docket. *Id.* at 42. The trial court also found good cause supported the postponement of the original trial date. *Id.* at 45.

On June 6, 2017, the defense requested a postponement of the trial date. ECF 5-9. The state objected, but the Circuit Court granted the postponement because there were no judges available to preside over the case. *Id.* Again, on September 13, 2017, the Circuit Court postponed the trial date to January 24, 2018, because there were no judges available. ECF 5-10.

In January of 2018, Wright filed two pro se motions to dismiss the indictment, arguing again that the trial date violated the *Hicks* Rule and his speedy trial rights were violated. ECF 5-1, at 75-84. On the day the trial was set to begin, January 24, 2018, Wright entered an *Alford*[2] plea to three counts in the indictment. The terms of the plea included a binding sentence on the home invasion case of seventy years, with all but twenty years suspended, and permitted Wright, after five and a half years' incarceration, to file a petition for a substance abuse evaluation and commitment to a treatment facility pursuant to Md. Code Ann., Health-Gen. §§ 8-505, 507. ECF 5-11, at 25–26. On the probation violation case, the plea involved a binding sentence of a consecutive eleven years, with all but five years suspended. *Id.* at 27. The probation violation plea also permitted Wright to file a petition for substance abuse evaluation and commitment after five and a half years' incarceration. *Id.* The plea also permitted Wright to maintain his right to appeal the issues raised in his counseled and pro se motions to dismiss concerning the *Hicks* Rule

---

[2] "An *Alford* plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest." *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011) (citing *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)).

3

and his speedy trial rights. *Id.* at 4–8. The trial court accepted the plea and sentenced Wright accordingly. *Id.* at 28–53.

### B. Direct Appeal

Wright filed a direct appeal to the Appellate Court of Maryland,[3] in which he asserted two errors: (1) the trial court erred by denying Wright's motions to dismiss pursuant to Md. Rule 4-271, Md. Code Ann., Crim. Proc. § 6-103 and *State v. Hicks*, 285 Md. 310 (1979), and (2) the trial court erred by denying Wright's motion to dismiss for violation of his constitutional right to a speedy trial. ECF 5-1, at 86. On March 22, 2019, the Appellate Court of Maryland affirmed the convictions and sentence. *Id.* at 177–192. Wright failed to file a timely petition for a writ of certiorari to the Supreme Court of Maryland.[4]

Instead, Wright filed a state court petition for a writ of habeas corpus. *Id.* at 194–202. At the hearing, the Circuit Court judge cautioned Wright that the appellate courts may interpret his writ of habeas corpus as his sole postconviction petition. ECF 5-12, at 16. Wright expressed that he did not want to compromise his ability to file a postconviction petition, *id.* at 14, and decided not to move forward with the habeas corpus petition, *id.* at 17.

Wright next attempted to file a belated petition for a writ of certiorari with the Supreme Court of Maryland challenging the Appellate Court of Maryland's denial of his appeal. ECF 5-1, at 204–212. His December 2, 2019, petition was rejected as untimely. *Id.* at 213–219.

### C. State Post-Conviction Proceedings

On March 11, 2021, Wright filed a petition for postconviction relief pursuant to the Maryland Uniform Post-Conviction Procedure Act, Md. Code Ann., Crim. Proc. ("CP") §§ 7-101–.

---

[3] Formerly known as the Maryland Court of Special Appeals.

[4] Formerly known as the Maryland Court of Appeals.

7-204. *Id.* at 220–246, 251–252. Pertinent to this federal habeas petition, Wright raised a claim that his trial counsel was ineffective for failing to file an appearance in the correct case number, *id.* at 225–227, and a claim that the prosecutors engaged in misconduct by failing to serve his indictment until 79 days after his arrest. *Id.* at 232–235. The postconviction court issued a Statement of Reasons and Order on February 15, 2022, denying Wright's petition. *Id.* at 261–275. The Appellate Court of Maryland subsequently denied Wright's motion for leave to appeal. *Id.* at 291, 305–306, 312.

On January 13, 2023, Wright filed the present petition for habeas relief, in which he asserts three claims for relief:

(1) Counsel for Wright was ineffective where she entered her appearance under the wrong case number which kept his case from moving forward and had the effect of delaying his initial appearance for 81-days which in turn violated his 5th and 14th Amendment rights to due process, ECF 1, at 5;

(2) The state's failure to serve Wright his warrant for 79 days kept Wright's case from moving forward and had the effect of delaying his initial appearance for 81-days which in turn violated Wright's 5th and 14th Amendment rights to due process, *id.* at 6;

(3) Wright was denied his Constitutional 6th Amendment right to a speedy trial, *id.* at 8.

Respondents filed an answer, arguing that all three grounds for relief are procedurally defaulted. ECF 5, at 32–41. Respondents alternatively argue that Wright's ineffective assistance of counsel claim should be denied because it lacks merit. *Id.* at 35–38.

## II. LEGAL STANDARD

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see*

5

*also Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## III.  PROCEDURAL DEFAULT

Respondents first argue that all three of Wright's grounds for relief are procedurally defaulted. ECF 5, at 32–35, 38–41. A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition for post-conviction relief filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103. After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court. *Id.* § 7-109. If the Appellate Court denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Wright asserted his first and second grounds for relief in his state postconviction petition. ECF 5-1, at 225–227, 232–235. The postconviction court found that both claims were waived pursuant to Md. Code Ann., Crim. Proc. 7-106(b)(1)(i) because Wright failed to raise them in his direct appeal. *Id.* at 272-274. Wright's first and second grounds for relief are consequently procedurally defaulted because Md. Code Ann., Crim. Proc. § 7-106(b)(1) is an independent and adequate state ground sufficient to bar federal habeas review. *See Hopkins v. Goins-Johnson*, Civ.

7

No. PWG-13-3336, 2016 WL 5477560, at *5 (D. Md. Sept. 29, 2016), *aff'd sub nom. Hopkins v. Goins-Johnson*, 678 F. App'x 94 (4th Cir. 2017); *Nivens v. Morgan*, Civ. No. TDC-16-2648, 2019 WL 6067407, at *4 (D. Md. Nov. 15, 2019), *aff'd in part, appeal dismissed in part*, 831 F. App'x 75 (4th Cir. 2020).

Wright asserted his third ground for relief in his appeal to the Appellate Court of Maryland, ECF 5-1, at 86, but the record reflects that he failed to seek a timely writ of certiorari with the Supreme Court of Maryland when the Appellate Court of Maryland denied his appeal, *id.* at 213. The failure to comply with procedural requirements of state law is also an independent and adequate ground for dismissal and bars re-litigation of the claim in a habeas petition. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *see also Richmond v. Polk*, 375 F.3d 309, 322 (4th Cir. 2004); *O'Sullivan*, 526 U.S. at 847, (where habeas petitioner failed to seek discretionary review from state appellate court and "the time for filing such a petition ha[d] long passed," it "resulted in a procedural default"). The dismissal of Wright's petition for writ of certiorari as untimely constitutes an independent and adequate state procedural rule which prohibits this Court's review of Wright's third ground for relief.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the

8

petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default doctrine applies here. Wright argues that the first and second claims for relief should not be considered waived because the postconviction court never addressed his due process argument. ECF 7, at 2. The record does not support this assertion. Wright's first ground for relief asserts a claim for ineffective assistance of counsel under the Sixth Amendment. ECF 1, at 5. His second ground for relief complains about the delay the state created by failing to serve him with the indictment for eighty-one days. *Id.* at 6–7. The record reflects that the postconviction court addressed each of these claims. ECF 5-1, at 270–274. Wright appears to argue that the postconviction court overlooked separate claims under the Due Process Clause, but when a constitutional claim is covered by a specific constitutional provision, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Wright also claims that the first and second claims for relief should not be considered defaulted because he failed to raise them on direct appeal. ECF 7, at 4. Wright argues that his plea agreement limited the claims he could have raised on appeal. *Id.* But Wright agreed to the

9

terms of the plea deal, ECF 5-11, at 37, which only permitted him to appeal his motions to dismiss based on the *Hicks* Rule and speedy trial rights, *id.* (confirming that Wright preserved the "ability to raise" arguments on appeal related to "*Hicks* . . . as well as with the constitutional speedy trial issue").[5]

Next, Wright argues that he made a "mistake" by failing to timely seek a petition for a writ of certiorari to the Maryland Supreme Court on his third ground for relief. ECF 7, at 4. Wright's mistake is insufficient to excuse the procedural default of the third ground for relief. *Breard*, 134 F.3d at 620 ("Cause" consists of "some objective factor external to the defense [that] impeded [petitioner's] efforts to raise the claim in state court at the appropriate time.").

Where Wright has provided no basis for excusing his procedural default, all three grounds for relief are not properly before this Court and will be dismissed. In any event, as discussed below, even if the claims were not procedurally defaulted, they would be dismissed for lack of merit.

## IV. MERITS[6]

Wright's first claim for relief contends that his counsel was ineffective for entering her appearance in the wrong case and contributing to the delay of his proceedings. ECF 1, at 5. The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, the Supreme Court held that to prevail on a claim of

---

[5] In Section IV, below, the Court considers the second ground for relief as part of Wright's speedy trial claim. Arguably, for this reason, it was raised in his appeal. However, it would be procedurally defaulted as part of the third ground for relief because Wright failed to appeal his speedy trial claim to the Supreme Court of Maryland.

[6] Because Wright's three claims for relief are interrelated, the merits of the claims will be addressed together.

10

ineffective assistance of counsel, a petitioner must establish two elements: deficient performance and prejudice. 466 U.S. 668, 692 (1984). First, a petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" with a reliable result. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

The postconviction court denied Wright's ineffective assistance of counsel claim. ECF 5-1, at 270–273. Citing to the Appellate Court of Maryland's opinion on appeal (discussed in detail

11

below), the postconviction court concluded that Wright failed to show that he was prejudiced by his counsel's error in entering her appearance. *Id.* at 270–273. Specifically, the postconviction court found that there was no prejudice, and no speedy trial violation based on the delay between the indictment and the *Alford* plea, and Wright could not demonstrate that the outcome of his proceeding would have been different if his counsel had entered her appearance in the correct case on an earlier date. *Id.* at 271.

The postconviction court also found that there was no merit to Wright's contention that his counsel's error prejudiced his ability to assert a violation of the *Hicks* Rule. *Id.* at 272. The postconviction court found that the record reflected it was unlikely that the trial would have commenced on January 8, 2017, which is the date Wright contends is 180-days from the day his counsel should have properly entered her appearance. This finding rested on the fact that after his defense counsel was substituted, Wright's second counsel asked for a postponement of the trial date on June 6, 2017 since she was not prepared to commence a jury trial so close in time to her appointment. *Id.* The postconviction court logically reasoned that if defense counsel was unprepared in June of 2017, she would not have been prepared a few months earlier, either. *Id.*

The Court cannot say that no reasonable jurist would have reached the same conclusion as the postconviction court when it found that Wright was not prejudiced by his first counsel entering her appearance in the wrong case. For this reason, Wright's first ground for relief lacks merit.

Wright's second and third grounds for relief concern his constitutional speedy trial rights.[7] After entering an *Alford* plea, Wright appealed the preserved issue of whether his speedy trial

---

[7] Wright's habeas petition does not appear to be seeking relief based on a violation of the *Hicks* Rule, which was also a claim raised in his appeal. To the extent the petition could be interpreted as raising such a claim, it does not implicate the Sixth Amendment and is non-cognizable in federal habeas relief. *See Vance v. Bishop*, Civ. No. ELH-18-133, 2020 WL 2732075, at *9 (D. Md. May 22, 2020), *appeal dismissed and remanded,* 827 F. App'x 333 (4th Cir. 2020); *c.f. Hicks*, 285 Md.

12

rights were violated by the delays in his proceedings. ECF 5-1, at 85–136. The Appellate Court of Maryland denied Wright's speedy trial claim:

> The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Whether a defendant has been denied his constitutional right to a speedy trial must be determined ad hoc by applying a four-factor balancing test, which considers: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Epps v. State*, 276 Md. 96, 104, 106 (1975).
>
> \*\*\*
>
> In this case, over twenty-seven months passed between the date the State filed an indictment, and the date [Wright] entered his Alford plea. This length of delay is of "constitutional dimension" and warrants analysis. *See Ratchford v. State*, 141 Md. App. 354, 359 (2001) (finding delay of eighteen months of "constitutional dimension"). But the length of delay alone does not result in a speedy trial violation, and we must consider it alongside the other *Barker* factors.
>
> The second *Barker* factor is the reason for the delay. In analyzing the reasons for pre-trial delay, reviewing courts give different weights to different reasons for delay. The Supreme Court has held as follows: "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimately responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.
>
> Here, approximately twelve of the twenty-seven months of pre-trial delay weigh against the State. The State was solely responsible for seventy-seven days of pre-trial delay when it held [Wright] without serving him with his indictment. These seventy-seven days weigh heavily against the State. Additionally, the circuit court postponed the trial date four times. Two of the postponements, contributing 189 days of delay, were solely due to court unavailability. [Wright] also requested a postponement—which the court noted that it would not grant except that there were no judges available for trial—resulting in ninety-nine days' delay. The 288 days of delay for court unavailability ultimately weigh against the State. *See id.* (noting that the "ultimate responsibility" for neutral reasons such as overcrowded courts "must rest with the government rather than with the defendant"). Delays arising from court unavailability do not weigh heavily against the State, however, as overcrowded courts are a "more neutral reason," and do not evince a "deliberate attempt to delay

---

.310 (providing that Maryland intended to provide additional statutory rights beyond the minimum threshold established by the Sixth Amendment).

the trial in order to hamper the defense." *Hallowell v. State*, 235 Md. App. 484, 516 (2018) (quoting *Barker*, 407 U.S. at 531). Finally, [Wright] requested a postponement that resulted in an eighty-two-day delay, which we weigh against [Wright]. As only seventy-seven days of pre-trial delay are directly attributable to the State, and an additional 288 days weigh only minimally against the State, this factor does not favor dismissal.

The third *Barker* factor is whether and to what extent [Wright] asserted his speedy trial right. Although a defendant has "no duty to bring himself to trial," *Barker*, 407 U.S. at 527; *Epps*, 216 Md. at 118, his assertion of the right is "entitled to strong evidentiary weight in determining whether [he was] being deprived of the right." *Barker*, 407 U.S. at 531-32; *Epps*, 276 Md. at 118. This is because "the strength and timeliness of a defendant's assertion of his speedy trial right indicate whether the delay has been lengthy and whether the defendant begins to experience prejudice from that delay." *Glover*, 368 Md. at 228. Courts examining a defendant's assertion of his speedy trial right can weigh the "frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker*, 407 U.S. at 529. But invoking Hicks is not the same as asserting one's speedy trial right. *See Marks v. State*, 84 Md. App. 269, 281 (1990) (holding that [Wright] waived his speedy trial right where he only raised the Hicks issue at trial). "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532.

[Wright] argues that he asserted his right to a speedy trial at every opportunity. [Wright's] attorneys both prayed for a speedy trial when they entered appearances in this case. While these filings may have put the State on notice that [Wright] was asserting his speedy trial right, they do not bear significant weight in the speedy trial analysis. *See id.* at 529; *Lloyd v. State*, 207 Md. App. 322, 332 (2012) (characterizing the defendant's assertion of his speedy trial right in an omnibus motion as "little more than the avoidance of waiver"). Aside from pro forma language in his counsel's early filings, [Wright] did not mention his constitutional speedy trial right until he filed a pro se motion to dismiss five days before he entered the plea that resolved his case. [Wright] did object to the postponement of the first trial date and filed a Hicks motion in January 2017, but that motion did not include a constitutional speedy trial claim. Thus, the third *Barker* factor weighs against dismissal of [Wright's] case.

The fourth and "most important" *Barker* factor is prejudice to the defendant. *Peters v. State*, 224 Md. App. 306, 364 (2015). A determination of prejudice must consider the three interests of defendants that the speedy trial right was designed to protect: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532-33; *Epps*, 276 Md. at 106-07. The first two of the factors are "generally afforded only slight weight," *Hallowell*, 235 Md. App. at 518, and the most important factor in establishing prejudice is the inability to prepare one's defense. *Wilson v. State*, 148 Md. App. 601, 639 (2002).

> [Wright] was incarcerated for approximately twenty months before his trial, and he asserted in his pro se motion to dismiss on constitutional speedy trial grounds that he suffers from anxiety regarding his case. But a "bald allegation" of anxiety "has little significance," *Howell v. State*, 87 Md. App. 57, 86 (1991), and these factors weigh only slightly in [Wright's] showing of prejudice. [Wright] has pointed to no witnesses or physical evidence lost because of the delay. In the absence of any showing of prejudice, this factor does not weigh in favor of dismissal. *See Wilson*, 148 Md. App. at 639. While the twenty-seven months of pretrial delay in [Wright's] case warrant constitutional analysis, only around twelve months weigh against the State, and all but seventy-seven days weigh lightly. Most significantly, however, [Wright] failed to show any prejudice. The circuit court did not abuse its discretion or err in denying appellant's motion to dismiss for violation of his constitutional right to a speedy trial.

ECF 5-1, at 188–192.

Wright contends in his third ground for relief that his speedy trial rights were violated. ECF 1, at 8. When addressing this claim, the Appellate Court of Maryland correctly identified the controlling legal precedent, *Barker*, 407 U.S. 514, and applied it to the facts of Wright's case. Notably, the Appellate Court of Maryland found that Wright was not prejudiced by the delay, only 77 days of delay were caused by the prosecution, and most of the delay (288 days) was attributed to the lack of available judges, a factor that carries less weight in the *Barker* analysis. *See Barker*, 407 U.S. at 531.

Wright has not demonstrated by clear and convincing evidence that the Appellate Court of Maryland's factual conclusions about the delays in his proceedings are incorrect. *See* 28 U.S.C. § 2254(e)(1). He has also failed to identify a United States Supreme Court opinion that supports a conclusion that the Appellate Court of Maryland's dismissal of his speedy trial claim was contrary to or an unreasonable application of federal law. 28 U.S.C § 2254(d).

The same analysis applies to Wright's second claim for relief because he contends that the state delayed his proceedings by failing to promptly serve him with the indictment. ECF 1, at 6–7. This allegation constitutes part of the factual scenario that contributed to the delays in Wright's

proceedings. As discussed above, Wright's second claim for relief is covered by the specific constitutional provision concerning the right to a speedy trial and does not call for a separate analysis. *Lanier*, 520 U.S. at 272. When assessing Wright's speedy trial claim, the Appellate Court of Maryland attributed 77 days of delay to the state for holding Wright without serving the indictment and concluded that those 77 days "weigh heavily against the state." ECF 5-1, at 189. The Appellate Court of Maryland considered this 77-day delay when weighing the *Barker* factors but ultimately concluded that no speedy trial violation had occurred.[8] ECF 5-1, at 188–192. The second ground for relief is part of Wright's third claim for relief. Thus, for the same reasons relief is denied as to Wright's third ground for relief, the state court's dismissal of Wright's speedy trial claim is not contrary to or an unreasonable application of federal law.[9]

Accordingly, all three of Wright's claims for relief would have been dismissed for lack of merit even if they were not procedurally defaulted.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the Court has denied the petition on the merits, a

---

[8] In his second ground for relief Wright contends that the delay was 81 days. ECF 1, at 6–7. The Appellate Court of Maryland reached 77 days, calculating the delay from the date Wright was detained at the Harford County Detention Center on July 3, 2016, and the date he was served with the indictment, September 19, 2016. Wright appears to calculate 81-days from July 3, 2016, until the date of his arraignment on September 21, 2016. *Id.* In any event, the 4-day discrepancy would have no impact on the *Barker* analysis.

[9] Wright raised the second claim for relief in his postconviction petition. ECF 5-1, at 232–235. The postconviction court relied on the Appellate Court of Maryland's speedy trial analysis when denying the merits of the claim. *Id.* at 273–274.

petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Upon a review of the record, this Court finds that Wright has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Wright may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. Fed. R. App. P. 22.

## VI.  CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is **DENIED**. The Court will decline to issue a certificate of appealability. A separate Order shall issue.

Date: January 21, 2026

/s/
Brendan A. Hurson
United States District Judge